UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ROBERT QUACO

                      Plaintiff,

-v-

LIBERTY INSURANCE
UNDERWRITERS INC.,

                      Defendant.

No. 17-cv-7980 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

      Plaintiff Robert Quaco brings this action against Defendant Liberty Insurance Underwriters Inc. ("Liberty"), alleging that Liberty has a duty to cover and defend an underlying civil action currently pending in New York State Supreme Court, Bronx County (the "Underlying Litigation"). (Doc. No. 11 ("Am. Compl.") ¶ 1.).[1]  Now before the Court is Liberty's motion to dismiss Quaco's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as Quaco's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Liberty's motion to dismiss is DENIED and Quaco's motion for summary judgment is GRANTED.

I. BACKGROUND

A. Facts

      This action involves a condominium complex in the Bronx, known as the Latitude Riverdale Condominiums ("Latitude"). On March 6, 2007, 3585 Owner, LLC (the "Sponsor")

---

[1] *Bd. of Managers of the Latitude Riverdale Condo. v. 3585 Owner LLC, Robert Quaco, Glen D. Wolland, Emerich Goldstein, et al.* (N.Y. Sup. Ct., Bronx Cty., Index No. 27319/2016E).

entered into a contract to construct and develop that residential property in the Riverdale section of the Bronx.[2] (Doc. No. 20 ("Underlying Am. Compl." or "Underlying Amended Complaint") ¶ 1, 27.) Under the terms of that contract, the Sponsor was charged with promoting and ultimately selling condominium units to purchasers. (*Id.* ¶ 31.) The Sponsor began selling units around May 2009. (*Id.*)

Between July 21, 2010 and July 10, 2014 (the "Sponsor Control Period") – when most of the unit sales took place – a majority of the Board of Managers of Latitude (the "Board") was comprised of individuals affiliated with the Sponsor. (*Id.* ¶ 9, 110–11.) Quaco was one such individual, serving as both a principal of the Sponsor and as a member of the Board from at least 2007 through the present lawsuit. (Underlying Am. Compl. ¶ 13–15.) When the Sponsor Control Period terminated on or about July 10, 2014, the Sponsor lost two seats on the Board, ending the Sponsor's "complete dominion and control" of the Board. (*Id.* ¶¶ 18, 21, 110.) Quaco nevertheless continued to serve as the Sponsor's lone representative on the Board. (*Id.* ¶ 15.)

On April 1, 2016, Latitude entered into an insurance policy agreement (the "Policy") with Liberty to cover expenses associated with legal claims made against Latitude that arose between April 1, 2016, and April 1, 2017. (Am. Compl. ¶ 9; Doc. No. 19 ("Ins. Policy") §§ 1, 2.1–2.3.) Among its provisions, the Policy covered (with limited exclusions) defense costs for any claim arising against Latitude and/or individuals acting as Latitude directors, trustees, officers,

---

[2] The facts set forth herein are taken from the Amended Complaint (Doc. No. 11), statements or documents incorporated into the amended complaint by reference, and documents upon which Plaintiff Quaco relied in bringing the suit. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In ruling on the instant motions, the Court has also considered Defendant's memorandum of law in support of its motion (Doc. No. 26-1), Plaintiff's memorandum of law in support of its motion for summary judgment (Doc. No. 30), Plaintiff's Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 (Doc. No. 31 ("Pl. 56.1")), Defendant's Reply (Doc. No. 32 ("Def. Reply")), Defendant's Rule 56.1 Counterstatement (Doc. No. 32-3 ("Def. 56.1")), and Plaintiff's Reply (Doc. No. 33 ("Pl. Reply")).

employees, committee members, or volunteers within the year-long period of coverage. (Ins. Policy §§ 1, 2.1–2.3, 23.10–23.12.)

On October 27, 2016, the Board commenced the Underlying Litigation in New York Supreme Court, alleging in its amended complaint (the "Underlying Amended Complaint") that the Sponsor was responsible for various construction defects in the buildings. (Am. Compl. ¶¶ 15, 35.) The Board also accused Quaco of violating his fiduciary duties of loyalty to the Board. (*Id.* ¶ 26–27.)

Shortly after the commencement of the Underlying Litigation, Quaco filed a claim with Liberty as an Insured under the Policy, asserting that Liberty was obliged to cover any costs associated with lawsuits against Latitude or its Board. (*Id.* ¶¶ 16–17.) However, in a letter dated November 4, 2016, Liberty rejected Quaco's demand, citing Sections 4.11 and 4.12 of the Policy (*id.* ¶ 18), which exclude claims "based upon, arising from, or in any way related to" (1) "any Construction Defect" (Ins. Policy § 4.11), and (2) "any actual or alleged liability of an Insured, affiliated with . . . [a] sponsor, and which is related to actual or alleged misconduct on the part of such . . . sponsor . . . ." (*id.* § 4.12).

Relying on these exclusions, Liberty asserted that "[w]hile Robert Quaco serves as a member of the Board, the lawsuit filed against him is clearly related to his capacity as the sponsor of Latitude" and pertains to "misconduct[] by him and his company," thus triggering Section 4.12. (Doc. No. 28-3 at 3.) Liberty further stated that the lawsuit's allegations "all fall within the definition of Construction Defect under the Policy" and are thus subject to Section 4.11. (*Id.*)

Quaco responded in two letters dated November 10 and December 7, 2016, arguing that neither of the exclusions contained in Sections 4.11 and 4.12 relieved Liberty of its duty to defend the Underlying Litigation. (Am. Compl. ¶ 19.) Specifically, Quaco maintained that one of the

3

underlying causes of action concerned Quaco's own alleged negligence and/or dereliction of fiduciary duty – which would be covered by the Policy – rather than construction defects or the Sponsor's misconduct. (*Id.*) For that reason, Quaco argued that the Policy required Liberty to defend the entire action. (*Id.* ¶ 20.)

On June 21, 2017, attorneys for the Latitude Board of Managers filed an amended complaint in the Underlying Litigation (*Id.* ¶ 22), and on June 28, 2017, Quaco again contacted Liberty to request coverage of his defense against that complaint. (*Id.* ¶ 23.) On July 13, 2017, Liberty once again denied coverage on the basis of the Section 4.11 and 4.12 exclusions. (*Id.* ¶ 24.)

B. Procedural History

Quaco commenced this lawsuit in New York State Supreme Court, New York County on September 14, 2017. (Doc. No. 1.) On October 17, 2017, the case was removed to this Court (*id.*), and on October 25, 2017, Quaco filed an Amended Complaint asking the Court to (1) declare that Liberty has a duty to defend him in the Underlying Litigation, and (2) award him the legal fees he has thus far expended defending that suit. (Am. Compl.) Now before the Court is Liberty's motion to dismiss, filed on January 22, 2018 (Doc. No. 26), as well as Quaco's cross-motion for summary judgment, filed on February 13, 2018 (Doc. No. 27). Liberty argues that it is not liable for defending the Underlying Litigation because Quaco's claims fall within the exclusions set forth in the Policy. (Doc. No. 26-1.) Quaco, in turn, argues that one or more of the underlying claims do not fall under either of these exclusionary provisions, and that under New York law, Liberty is obliged to defend the entire action. (Doc. No. 30.) Because the parties' motions are basically mirror images of each other, the Court will address them together.

## II. Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc.*, 493 F.3d at 98; *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

By contrast, a motion for summary judgment pursuant to Rule 56(a) should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable factfinder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving

party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," see *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

III. DISCUSSION

In his motion for summary judgment, Quaco argues that neither Section 4.11 nor Section 4.12 applies to the allegations set forth in the Underlying Litigation. (Am. Compl. ¶ 25.) Specifically, Quaco contends that the fourth cause of action in the Underlying Litigation "expressly states a claim of breach of fiduciary duty against Mr. Quaco," describing conduct by Quaco himself that took place after the Sponsor Control Period had terminated and that had nothing to do with alleged construction defects or the misconduct of the Sponsor. (*Id.* ¶¶ 26, 28–30.)

Quaco argues that since these particular claims are not subject to the Policy's Exclusions, Defendant Liberty is obliged under New York law to defend the entire Underlying Litigation. (*Id.* ¶ 20.)[3]

When assessing whether an insurer has a duty to defend an insured, a court must consider "only those facts alleged in the underlying complaint." *Cont'l Cas. Co. v. JBS Constr. Mgmt., Inc.*, No. 09Civ.6697 (JSR), 2010 WL 2834898, at *2 (S.D.N.Y. July 1, 2010). Nevertheless, the allegations in a complaint must be "liberally construed" in favor of coverage, *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d. 518, 521 (N.Y. 1981), and "the duty to defend arises if the claims against the insured arguably arise from a covered event, even if the claims may be meritless or not covered," *Rhodes v. Liberty Mut. Ins. Co.*, 892 N.Y.S.2d 403, 405 (N.Y. App. Div. 2009). "When an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d. 167, 170 (N.Y. 2002). Additionally, "[a]ny ambiguity as to the insurer's duty to defend is resolved in favor of the insured." *IBM v. Liberty Mut. Fire Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (citations omitted). Finally, under New York's "entire action" doctrine, "[t]he insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F.Supp.2d 527, 535 (S.D.N.Y. 2011); *see also CGS Indus. Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013).

---

[3] Because both parties assume the applicability of New York law (*see* Doc. Nos. 26, 27), the Court need not conduct a choice-of-law analysis and will apply New York law to this case. *See Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) ("The parties' briefs . . . rely on New York law, [so] [u]nder the principle that implied consent to use a forum's law is sufficient to establish choice of law, we will apply New York law to this case.") (citation omitted).

Of note here are two assertions contained in paragraph 118 of the Underlying Amended Complaint, each of which describes events alleged to have occurred *after* the termination of the Sponsor Control Period in 2014. First, the Underlying Amended Complaint alleges that Quaco circumvented the Board and improperly hired an "unqualified" firm with which Quaco had "a pre-existing" and undisclosed "business relationship" to perform HVAC repairs caused by the Sponsor's allegedly-shoddy construction work. (Underlying Am. Compl. ¶ 118(a).) Second, Quaco is alleged to have improperly authorized "structural alterations to Building common elements" in connection with an HVAC unit for one of the Sponsor's commercial units, which he then misrepresented in filings to the New York City Department of Buildings. (Underlying Am. Compl. ¶ 118(b).) Quaco argues that neither allegation involves actual or alleged misconduct on the part of the Sponsor (as required to trigger Section 4.12), nor concerns construction defects (as required to trigger Section 4.11). (Am. Compl. ¶¶ 28–30.)

With respect to the allegations contained in paragraph 118(a) – which charge that Quaco commissioned the HVAC repairs in response to conditions "caused by Sponsor's construction work," (Underlying Am. Compl. ¶ 118) – the claim arguably falls within the ambit of Section 4.11, which expressly excludes any claim "based upon, arising from, or in any way related to any Construction Defect."

But the Court need not decide whether the allegations in paragraph 118(a) are definitively excluded from coverage, because the Court finds that the allegations in paragraph 118(b) independently trigger Liberty's duty to defend. Paragraph 118(b) alleges that Quaco altered the Latitude building's common area "to install an HVAC unit that service[d] one of Sponsor's commercial units" without proper Board or City authorization; it also alleges that Quaco

8

misrepresented the HVAC installation as non-structural in nature in filings made to the Buildings Department. (Underlying Am. Compl. ¶ 118(b).)

For starters, these allegations have nothing to do with any alleged construction defect and therefore fall outside of Section 4.11. Nor does paragraph 118(b), when read in concert with the rest of the Underlying Amended Complaint, suggest that the wrongdoing involving the HVAC unit in 2016 was "related to actual or alleged misconduct on the part of" the Sponsor. (Ins. Policy § 4.12.) Significantly, in the sections preceding paragraph 118, Latitude premises its breach of fiduciary duty claims on conduct that occurred *during* the Sponsor Control period, and expressly names the "Sponsor Board Members" (including Quaco and two others). (Underlying Am. Compl. ¶ 23.) By contrast, the conduct described in paragraph 118 is alleged to have occurred "after the Sponsor Control Period terminated." (*Id.* ¶ 118) Moreover, paragraph 118 names Quaco *individually* – not as a Sponsor Board Member – which suggests that paragraph 118 sets forth a breach of fiduciary duty by Quaco himself, disconnected from his involvement with the Sponsor. Indeed, paragraph 118 emphasizes that Quaco breached "*his* fiduciary duty" to the Board, and notes that he "still maintained a seat on the Board" even "after the Sponsor Control Period terminated." (Underlying Am. Compl. ¶ 118.) Given that under New York law, allegations must be "liberally construed" in favor of coverage, *Ruder & Finn Inc.*, 422 N.E.2d. at 521, the charges in paragraph 118(b) "arguably arise from a covered event," *Rhodes*, 892 N.Y.S.2d at 405, since they conceivably allege misconduct undertaken in Quaco's individual capacity, not "actual or alleged misconduct on the part of . . . [the] sponsor." (Ins. Policy § 4.12.) Therefore, because the claims contained in paragraph 118(b) arguably fall outside of the scope of either exclusion, the "entire action" doctrine, as the name suggests, compels Liberty to defend the entire Underlying Action. *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 869

9

(N.Y. 1997); *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 559 F. App'x at 20; *Mass. Bay Ins. Co. v. Penny Preville, Inc.*, No. 95-cv-4845 (RPP), 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996).

As a last ditch attempt to avoid coverage, Liberty cites *Fitzpatrick v. American Honda Motor Company* for the proposition that an insurer must have "actual knowledge of facts establishing a reasonable possibility of coverage" in order to be found liable for coverage. (Doc. No. 32 at 2 (citing 78 N.Y.2d 61, 67 (N.Y. 1991)). But *Fitzpatrick* says no such thing. To the contrary, *Fitzpatrick* stands for the proposition that an insurer has a duty to defend its insured in a pending lawsuit even where the pleadings do *not* allege a covered event *if* the insurer has actual knowledge of facts establishing a reasonable possibility of coverage. 78 N.Y.2d at 65. In essence, *Fitzpatrick* prevents insurers from "shield[ing] [themselves] from the responsibility to defend" despite *actual* knowledge that the underlying lawsuits involved a "covered event." *Id.* at 66. Obviously, this case presents precisely the opposite situation. Here, Liberty is attempting to reach beyond the allegations in the underlying complaint – which clearly compel coverage – to dredge up facts that might help it escape coverage liability. (Doc. No. 32 at 2–3.) Not surprisingly, courts applying New York law have rejected such attempts to convert *Fitzpatrick* from a shield for the insured into a sword for the insurer. *See, e.g., Cont'l Cas. Co.*, 2010 WL 2834898, at *2 (collecting cases). As a result, Liberty cannot escape its duty to defend by relying on *Fitzpatrick* or extrinsic facts relating to its knowledge of the underlying lawsuit.

IV. CONCLUSION

In sum, Liberty has not met its burden of showing that all of the allegations in the underlying complaint "can be interpreted only to exclude coverage." *Town of Massena*, 98 N.Y.2d at 443 (citations omitted). Consequently, under the well-established "entire action" doctrine,

Liberty must defend the entire litigation even though only one claim is potentially covered. *See CGS Indus. Inc.*, 720 F.3d at 83.

Thus, for the reasons set forth above, Defendant's motion to dismiss is DENIED, and Plaintiff's motion for summary judgment is GRANTED. IT IS HEREBY ORDERED THAT, by September 28, 2018, the parties shall submit a joint letter explaining whether there is any dispute regarding the amount of costs and fees expended by Quaco in connection with the Underlying Litigation, and if so, proposing next steps to resolve that damages issue. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 26 and 27.

SO ORDERED.

Dated: September 23, 2018
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE